KURZON, Respondent, vs. ESPENHAINS DRY GOODS COMPANY, Appellant.

*March 7—June 6, 1933.*

630

For the appellant there was a brief by *Robert A. Hess,* attorney, and *Benjamin Poss, Clement Winzenburg,* and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Brazy, Mr. Poss,* and *Mr. Winzenburg.*

For the respondent there was a brief by *Rubin & Zabel,* attorneys, and *W. B. Rubin* and *R. R. Stauff* of counsel, all of Milwaukee, and oral argument by *Mr. Stauff* and *Mr. Rubin.*

The following opinion was filed April 11, 1933:

NELSON, J. The plaintiff is a licensed optometrist who has practiced his profession in the city of Milwaukee for more than fifteen years. The defendant at all times hereinafter mentioned was a Wisconsin corporation engaged in operating an extensive mercantile establishment in the city of Milwaukee. For many years prior to the commencement of this action it conducted in said city a department store, described by one of the witnesses as a store which sells all kinds of merchandise from "needles to automobiles." In the year 1924 the plaintiff entered into a contract with the defendant whereby the plaintiff was granted the exclusive license and privilege of practicing his profession, selling jewelry, silverware, kodaks, and optical goods in defendant's store, all upon the terms and stipulations therein contained. That contract provided that in case the terms and stipulations contained

therein were fully complied with, the contract was to continue for a period of five years. In April, 1927, the control of defendant passed to J. H. Mack, Inc. of New York and J. H. Mack became its president. Mack, Inc. at that time operated six specialty stores in the larger cities of the United States. From 1927, when the control of the defendant was purchased by Mack, Inc., down to the end of the year 1929, the store in Milwaukee was the only department store operated by it.

On or about the 1st day of May, 1928, while the contract hereinbefore mentioned was still in force, the plaintiff entered into a new contract with the defendant. It is this contract which governs this controversy and which the plaintiff asserts was breached by defendant. In this contract the defendant and the plaintiff were referred to as licensor and licensee respectively. The material provisions of the contract necessary to an understanding of this controversy are as follows:

"3. The Licensor will continuously conduct a mercantile business of its own in said building during the term of this agreement, but shall not sell nor offer for sale, nor permit to be sold or offered for sale in said building except by the Licensee such merchandise as Licensee is authorized to sell therein.

### "Conduct of Business.

"4. While the said business of the Licensee is to be and remain the property of the said Licensee, the sale of cameras, kodaks and films shall be so conducted that to customers purchasing merchandise of the Licensee his business shall appear to be a department of the business of the Licensor, provided that all purchases of merchandise by the Licensee and the receiving of merchandise so purchased, and dealing with creditors and the making of contracts or the incurring of liabilities or obligations by the Licensee, shall be made solely and exclusively in Licensee's name. The Licensee agrees during the term of this contract not to conduct any other camera, kodak and film business nor any other 'Optical Goods' business in the city of Milwaukee within a radius of

ten blocks of this location without the written consent of the Licensor. . . .

### "Hours of Business.

"6. The store shall be opened and closed each business day during the week at such hours as may be reasonable, taking into consideration the hours of opening and closing of other similar retail establishments in the city of Milwaukee, provided that the matter of opening and closing on Saturdays, legal holidays, and other special occasions shall be left to the discretion of the Licensor. . . .

"9. That the Licensor will make deliveries of packages in the city of Milwaukee for the Licensee and the Licensee agrees to pay therefor in addition to all other charges herein provided for the sum of $.20 for each package delivered by the Licensor. The Licensor shall not be liable for any damages caused by breakage in the delivery or handling for delivery of such packages to be handled for the Licensee. . . .

"19. Licensor shall maintain its own credit department and its own credit manager, and the matter of credits as well as credit or charge sales shall be subject to the approval and control of the Licensor through its said credit manager; all expense of said credit department and of the making and collection of credits, credit or charge sales, shall be met and paid by the Licensor. The Licensor shall keep a full, true, and complete record of such credit or charge sales of Licensee, or Licensee's department, which shall be open for inspection of the Licensee and his duly appointed agent at all reasonable times during business hours. The moneys due for merchandise so sold on credit shall be billed in the name of the Licensor only, and shall be settled for as a cash sale by Licensor to Licensee as provided for in article or paragraph numbered 18.

"The Licensee is to pay the Licensor, in addition to all other charges herein provided for, the sum of $.30 for each new charge account opened for his department and a similar charge for each inquiry of the Credit Bureau made by the Licensee with respect to any charge or charge account in the Licensee's department.

"20. . . . The Licensor may from time to time, at the request of the Licensee, designate a show window space for the display of the Licensee's merchandise, it being distinctly understood and agreed that the granting or withholding of

such space and the extent and location thereof shall be optional with the Licensor; except that space in front of one of the mirrored posts in Wisconsin Avenue windows will be used for the Licensee's Optical display, the Licensor reserving the right to use such space for other purposes on special occasions. . . .

"24. If either party shall fail to keep, observe, and perform the respective covenants and agreements hereby made, or any part thereof, then the other party may terminate this contract by notice in writing to the party breaching the same, without prejudice to any claims for damages, provided, that no determination shall be declared until the party committing the breach shall have been given notice in writing of such breach and shall have failed to remedy same within ten (10) days after the giving of such notice. Each and every notice in writing herein provided for, shall, if given by the Licensee to the Licensor, be sent by registered mail addressed to it, in care of Mr. J. H. Mack at 224 West 35th Street, New York City, Borough of Manhattan, and if given by the Licensor to the Licensee, shall be sent by registered mail addressed to the Licensee at 400 Wisconsin Avenue, Milwaukee, Wisconsin."

On December 22, 1930, a meeting of the various heads of departments was called. At that meeting Mr. Weinberg, defendant's vice-president, announced that the store planned to run a large sale to be known as a "going out of the department store business sale." A skeleton of the proposed advertising prominently bearing the words "going out of the department store business" was displayed at said meeting. The plaintiff was present but made no protest to the proposed sale or to the proposed advertising exhibits. The sale, which was extensively advertised as a "going out of the department store business sale" in the Milwaukee papers, commenced on December 26, 1930. The advertisements which appeared in the Milwaukee papers contained the following large type announcement: "Espenhains Going Out of Department Store Business." The words "department store" in the advertisement mentioned were in smaller type than the other words

of such phrase. In preparing for the sale the large display windows of the ground floor were hung with large advertising signs which apparently could be raised and lowered. When lowered such signs practically prevented a view into the display windows. When partially raised a view of the display windows could be had. During the continuance of the sale banners were suspended on wires strung along the aisles of the store which necessarily interfered with a view from one part of the store to another. The advertising announced that the sale of merchandise would be for cash and that no deliveries would be made. The plaintiff, feeling himself aggrieved because defendant was going out of the department store business and was so advertising, because his window display was obscured by advertising material hung in the windows, because a view of his department from other points in the store was obstructed by the numerous banners, and because the defendant advertised that all merchandise would be sold for cash and that no deliveries would be made, consulted his attorneys, with the result that this action was commenced on January 5, 1931. The complaint was verified on January 3, 1931. The complaint of the plaintiff alleged and the court found in substance that the defendant in going out of the department store business, in advertising that it was going out of such department store business, that merchandise would be sold only for cash, and that no deliveries would be made during the sale, and in filling its display windows with advertisements and suspending along its aisles numerous banners, breached its contract with the plaintiff. The court made extensive findings of fact and conclusions of law to which the defendant took numerous exceptions, but which, in the view we take of this action, need not be considered in detail.

An order was served on the defendant at the time of the service of the summons and complaint requiring the defendant to show cause why its advertising should not be changed

so that it would appear therefrom that the plaintiff's department was not going out of business but would continue to operate as before. Upon the hearing of the order to show cause the court ordered the defendant to include in its advertising the announcement that plaintiff's department would continue to operate. Subsequent to the date of the order nearly all of defendant's advertising which appeared prior to about the 22d day of March, 1931, contained the following announcement:

"To the Public: 'While we are going out of the department store business, we wish to announce that our service department such as the beauty parlor, optical department, lunch counter and shoe repair department will continue to operate as heretofore.'"

The plaintiff was apparently dissatisfied with the form of such announcement since his department was mentioned in connection with the beauty parlor, lunch counter, and shoe repair department, and complained to the defendant threatening to bring the defendant into court for its failure to comply with the court order as to advertising. Commencing about March 22, 1931, practically every advertisement thereafter contained the following announcement:

"For Your Convenience Our Well Known Optical Dep't., Beauty Parlor, Music Dep't., Lunch Counter and Shoe Repair Dep't. Will Continue to Operate as Heretofore."

Some of such announcements appeared in rather large type and others as a card framed with black lines. During the last days of March the store was closed for three days in preparation for the opening of "Our new 20th Century apparel store." The opening of the new store was extensively advertised along with the fact that "our well known optical department, etc., will continue to operate."

It appears that when the plaintiff entered into the contract, Espenhains, as operated by the defendant, contained about fifty departments. At the time the sale commenced

there were thirty-six departments, and when the store was opened as a specialty store in March, 1931, there were still eighteen departments.

During the sale, which continued until the end of March, 1931, there was a falling off in the business done by plaintiff's department and a resulting loss of profits as compared with former years. After the store opened as a specialty store the plaintiff remained there during the month of April. On May 1st he removed to new quarters in the Empire Building where he has since continued to practice his profession. At about the time he removed from the Espenhains store he organized a corporation to take over his business and thereafter such business was conducted by the corporation of which he was the president.

Defendant contends that it did not breach its contract with the plaintiff in going out of the department store business and in reopening its store as a large specialty store. With this contention we agree. The defendant did not covenant or agree that it would conduct or operate a department store during the life of the contract. It did agree to "continuously conduct a mercantile business of its own in said building during the term" of said contract. That at all times prior to plaintiff's removal it continuously conducted a mercantile business in said building is entirely free from doubt. There is nothing in the contract which suggests, much less provides, that the defendant would continue to operate a department store or continue to operate the store as it then existed. What the defendant agreed to do was to conduct a mercantile business. The words "mercantile business" are not ambiguous, and parol evidence was not admissible to show that "mercantile business" meant department store. The contract was carefully and deliberately framed. Its terms and conditions were carefully considered. It was not hastily entered into. It remained unsigned by the plaintiff for a period of six months. It was submitted to and consid-

ered by his counsel. The plaintiff knew that the control of defendant had passed to Mack, Inc. He knew the nature of the stores conducted in other cities by Mack, Inc. While the plaintiff may have thought that the Espenhains store would continue to be operated as a large department store, not once in the contract is the name "department store" mentioned. We conclude that it did not breach its contract in going out of the department store business.

The plaintiff further asserts that the defendant breached the contract in the following respects: (1) obscuring the view of plaintiff's window display and his department by placing advertising material in the windows and suspending banners along the aisles in the store, (2) suspending the giving of credit to his patrons during the sale, (3) denying him *pro rata* advertising during the sale, (4) withdrawing delivery service during the sale, (5) closing the store for three days at the end of March, and (6) reducing the size of the store or space occupied and the number of its employees. As to plaintiff's first assertion, the contract provided that the licensor might "from time to time, at the request of the licensee, designate a show window space for the display of the licensee's merchandise, it being distinctly understood and agreed that the granting or withholding of such space and the extent and location thereof shall be optional with the licensor; except that space in front of one of the mirrored posts in the Wisconsin avenue windows will be used for the licensee's optical display, the licensor reserving the right to use such space for other purposes on special occasions." Clearly, depriving the plaintiff of such space for a comparatively short period of time by putting advertising matter in the windows during a sale did not amount to a breach of the contract.

Nor do we think that the suspension of the privilege of extending credit to his patrons during the sale, under the

circumstances proven, amounted to a breach of the contract. Such suspension of credit could have had no appreciable effect upon plaintiff's business. But it appears that credit was in fact extended. The plaintiff himself testified that he could recall the name of but one person who had asked for and been denied credit. He knew of only two or three of such instances.

When the sale was first advertised no mention was made of plaintiff's department or of the fact that it would continue to be operated even though the department store business was to be discontinued. After the order to show cause hereinbefore referred to had been heard and the order made, nearly all of the advertisements thereafter appearing announced that the plaintiff's department was to be continued. The record discloses that he submitted no copy for advertising his department, did not advertise independently, and gave no notice in writing of such asserted breach of contract to the defendant in care of J. H. Mack of New York. We think the failure of defendant specifically to mention plaintiff's department in the earlier advertising, which obviously related to a merchandise sale, did not amount to a breach of the contract.

As to the failure of the defendant to maintain delivery service during the sale, we think the plaintiff failed to show that such lack of delivery service was of sufficient importance to his department to amount to a breach of the contract. The plaintiff made no request, either oral or in writing, that delivery service be afforded his department. His own testimony shows that the delivery service was of inconsequential concern to him. He testified that he had occasionally used it but could not say that he had used it twelve times a year.

The plaintiff complained of the fact that the store was closed three days just prior to the opening of the new Espenhains store on April 1st. The contract provided that the

matter of opening and closing the store on "special occasions" should be left to the discretion of the defendant. We think the construction placed upon this provision of the contract by the trial court in which it upheld plaintiff's contention that such closing constituted a breach of the contract cannot be sustained.

Plaintiff's further claim that the reduction in space occupied and the number of employees constituted a breach of the contract is without merit. The defendant made no agreement as to the amount of space it would occupy or as to the number of its employees.

As we view the evidence, all of plaintiff's complaints, other than that of going out of the department store business, were of minor importance and without real or substantial consequence to him or to his business. In any event, under the terms of the contract, these asserted grievances could not be claimed as breaches justifying termination of the contract without giving the defendant notice in writing by registered letter addressed to J. H. Mack at New York and affording it an opportunity, within ten days, to remedy the matters complained of.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.

WICKHEM, J., took no part.

A motion for a rehearing was denied, with $25 costs, on June 6, 1933.